UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
SAFETY POINT PRODUCTS, LLC et al. :
: CASE NOS. 1:12-CV-2812, 1:12-CV-2820;
*Plaintiffs*, : 1:12-CV-2831; 1:12-CV-2894
:
vs. : OPINION & ORDER
:
DOES 1-14, DOES 15-96, DOES 97-177, :
& DOES 178-197,
:
*Defendants.* :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In November 2012, Plaintiffs Safety Point Productions, Picture Perfect Corporation, and Voltage Pictures filed these four lawsuits against 197 unnamed defendants.[1] Plaintiffs allege that the 197 John Doe defendants infringed Plaintiffs' copyright by using the internet-based file sharing protocol BitTorrent to pirate Plaintiffs' movie.[2] For the following reasons, this Court finds *sua sponte* that Plaintiffs improperly joined Defendants, and thus SEVERS the claims against all Defendants. Plaintiffs are asked to notify the Court as to which Defendant shall remain in each of the four suits already filed. Plaintiffs are directed to refile their claims against the other defendants separately and to pay the appropriate filing fees for each action. Finally, Plaintiffs' motions for leave

---

[1] *See* 1:12-cv-2812, Doc. 4; 1:12-cv-2820, Doc. 3; 1:12-cv-2831, Doc. 1; 1:12-cv-2894, Doc. 1. In the interest of brevity, when referencing the record, this Court will cite only to Plaintiff's Amended Complaint in 1:12-cv-2812, unless there is a substantive difference between the cases.

[2] Doc. 4.

-1-

Case Nos.  1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

to take discovery are DENIED AS MOOT.

## I. Background

A. Factual Background

Plaintiffs allege that Defendants violated U.S. copyright law by using BitTorrent to download the movie.[3] BitTorrent is a program that enables users to share files via the internet.[4] Unlike other "peer-to-peer" (P2P) file sharing networks that transfer files between users or between a user and a central computer server, BitTorrent allows for decentralized file sharing between individual users who exchange small segments of a file between one another until the entire file has been downloaded by each user.[5] Each user that either uploads or downloads a file segment is known as a "peer."[6] Peers that have the entire file are known as "seeds."[7] Other peers, known as "leeches" can simultaneously download and upload the pieces of the shared file until they have downloaded the entire file to become seeds.[8]

Groups of peers that download and upload the same file during a given period are known as a "swarm," with each peer being identified by a unique series of alphanumeric characters known as a "hashtag" that is attached to each piece of the file.[9] The swarm's members are relatively

---

[3] *Id.* at 13
[4] *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1151 (N.D. Cal. 2011).
[5] *Id.*
[6] *Id.*
[7] *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 167 (S.D.N.Y. 2012), *see also* BitTorrent, Glossary, http://www.bittorrent.com/help/manual/glossary (last visited March 19, 2013).
[8] *Next Phase Distribution*, 284 F.R.D. at 167, *see also* BitTorrent, Glossary, http://www.bittorrent.com/help/manual/glossary (last visited March 19, 2013).
[9] *Next Phase Distribution*, 284 F.R.D. at 167.

Case Nos.  1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

anonymous, as each participant is identifiable only by her Internet Provider (IP) address.[10] Overseeing and coordinating the entire process is a computer or a server known as a "tracker" that maintains a record of which peers in a swarm have which files at a given time.[11] In order to increase the likelihood of a successful download, any portion of the file downloaded by a peer is available to subsequent peers in the swarm so long as the peer remains online.[12]

But BitTorrent is not one large monolith.  BitTorrent is a computer protocol, used by various software programs known as "clients" to engage in electronic file-sharing.[13]  Clients are software programs that connect peers to one another and distributes data among the peers.[14]  But a peer's involvement in a swarm does not end with a successful download.  Instead, the BitTorrent client distributes data until the peer manually disconnects from the swarm.[15]  It is only then that a given peer no longer participates in a given BitTorrent swarm.

*B. Procedural History*

In November 2012, Plaintiffs filed four separate lawsuits against 197 John Doe defendants.[16] Plaintiffs allege that by acting in concert via BitTorrent, Defendants infringed on Plaintiffs' intellectual property rights by downloading a movie entitled "*Puncture*".[17]  Plaintiffs justify joinder

---

[10] IP addresses are defined as " a series of numbers that are used to specify the address of a particular machine connected to the Internet."  See *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1145 (N.D. Cal. 2008) (citing *Columbia Ins. Co. v.seescandy.com*, 185 F.R.D. 573, 575 (N.D.Cal.1999)).

[11] *Hard Drive Productions*, 809 F. Supp. 2d at 1152. *see also* BitTorrent, Glossary, http://www.bittorrent.com/help/manual/glossary (last visited March 19, 2013).

[12] Doc. 4 at 4.

[13] *Patrick Collins, Inc. v. John Does 1-21*, 284 F.R.D. 161, 164 (E.D. Mich. 2012).

[14] *Hard Drive Productions*, 809 F. Supp. 2d at 1152.

[15] *Id.*

[16] 1:12-cv-2812, Doc. 1, 1:12-cv-2820, Doc. 1., 1:12-cv-2831, Doc. 1., 1:12-cv-2894, Doc. 1.

[17] 1:12-cv-2812, Doc. 4 at 2. Safety Point filed its certificate of copyright registration with its complaint.  *See* doc. 1-1.  The complaint also lists Picture Perfect Corporation and Voltage Pictures, LLC, as Plaintiffs.  It is not at all clear from the complaint who those Defendants are.

Case Nos.  1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

of the unnamed defendants because the four groups of defendants participated in their respective "swarms" in downloading the copyrighted material.[18]  On December 8, 2012, Plaintiffs filed a motion for leave to take discovery prior to the Rule 26 conference in order to learn the identities of Defendants from various Internet Service Providers (ISPs).[19]  In that motion, Plaintiffs again allege that joinder is proper, arguing that the unnamed defendants all took part in the same series of factual transactions.[20]

C. Litigation Involving BitTorrent

Because IP addresses are the only identifiers of peers within a BitTorrent system, it is difficult, if not impossible, to learn the true identities of the peers in a swarm.[21]  To pursue litigation, plaintiffs in BitTorrent suits must attempt to get early discovery to learn of the actual identities of the unnamed defendants.[22]  The requests have been the subject of much criticism, for the lawsuits are rarely litigated.  Rather, plaintiffs seek to take advantage of the resources of federal courts to force small, individual settlements.[23]

---

[18]*Id.* at 2-3.

[19]Doc. 6.

[20]*Id.* at 10-15.

[21]Doc. 4 at 6-7.

[22] Sean Karunaratne, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 291 (2012). Legitimate reasons for expediting discovery do exist however, because ISPs often routinely delete IP address data as a normal part of industry practice.  *See* Doc. 4 at 16; *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 242 (S.D.N.Y.2012).

[23]*Id.* at 303-304; Porn Companies File Mass Piracy Lawsuits: Are You at Risk? U.S. News and World Report (Feb. 2, 2012) (stating that defendants are given the option to settle for an amount around $5000 or face steep statutory damages); Jason R. LaFond, *Personal Jurisdiction and Joinder in Mass Copyright Troll Litigation*, 71 Md. L. Rev. Endnotes 51, 52 (2012) ("Defendants will simply pay the settlement demanded by the plaintiff, with no knowledge of their rights."); *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190 (D. Mass. 2012) (finding that despite defendants' participation in the same transaction, joinder was nevertheless improper because " it appears that . . . film companies may be misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlement"); *but see Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273 (S.D.N.Y. 2012) (holding that joinder is permissible where no evidence of coercive practices exist).

Case Nos. 1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

## II. Analysis

*A. Legal Standard*

Federal Rule of Civil Procedure 20(a)(2) allows defendants to be joined together in an action if "any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions and occurrences *and* any question of law or fact common to all defendants will arise in the action."[24] In considering joinder, the Court operates with considerable discretion, weighing the Rule 20 factors and the interests of fundamental fairness.[25] In determining the propriety of joinder, the Court analyzes the complaint and then determines whether the plaintiff's allegations satisfy the requirements of Rule 20.[26] Courts also consider whether severance would lessen confusion for the fact-finder or parties, an issue this Court would do well to consider given the number of unnamed defendants.[27]

*B. Rule 20 Factors*

Plaintiffs have not alleged facts to support the joinder of the 197 John Doe Defendants based on the Rule 20 factors. As noted above, Rule 20 requires that the rights asserted against defendants arise out of the same factual transaction, and that any question of law or fact common to all defendants will arise in the action. Courts are split on the issue of joinder in BitTorrent copyright litigation, with some finding it proper in certain circumstances,[28] and others not[29]. For the reasons

---

[24] Fed. R. Civ. P. 20(a)(2) (emphasis added).
[25] *Kuechle v. Bishop*, 64 F.R.D. 179, 180 (N.D. Ohio 1974).
[26] *Id.*
[27] *Third Degree Films v. Does 1-131*, 280 F.R.D. 493, 496 (D. Ariz. 2012); *Chavez v. Illinois State Police,* 251 F. 3d 612, 632 (7th Cir. 2001); *On the Cheap, LLC v. John Does 1-5011*, 280 F.R.D. 500 (N.D. California 2011).
[28] *Pac. Century Int'l v. Does 1–31*, No. 11 C 9064, 2012 WL 2129003, at *2 (N.D.Ill. June 12, 2012); *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 244 (S.D.N.Y.2012) (declining to sever where "the Doe Defendants were trading the exact same file as part of the same swarm"); *Patrick Collins, Inc. v. Does 1–15*, No. 11–cv–02164–CMA–MJW, 2012 WL 415436, at *2–*4 (D.Colo. 2012); *Call of the Wild Movie, LLC v. Does 1–1,062,*

Case Nos. 1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

below, this Court adopts the latter approach.

Plaintiffs' complaint says "every John Doe infringer, in concert with its John Doe swarm members, is allowing others to steal" and that "each John Doe acts in an interactive manner with other John Does."[30/] Despite Plaintiffs' statements, it is not at all clear that Defendants were part of the same transaction or occurrence. "Merely alleging that the Doe defendants all used the same file-sharing protocol, BitTorrent, to conduct copyright infringement of plaintiff's film without any indication that they acted in concert fails to satisfy the arising out of the . . . same series of transactions or occurrences requirement."[31/] Furthermore, a defendant's participation in a swarm does not mean that the defendant is always present and active in the swarm.[32/] Plaintiffs' IP address exhibits indicate that Defendants accessed the swarm at different times, on different days, using different BitTorrent clients.[33/] This suggests that Defendants were not wrapped up in a single factual occurrence.[34/]

Plaintiffs' other suits pose similar joinder problems, with some Defendants participating in the same swarm months apart from one another, using even more varied BitTorrent clients.[35/]

---

770 F.Supp.2d 332, 342–43 (D.D.C.2011); *W. Coast Prod., Inc. v. Does 1–5829*, 275 F.R.D. 9, 15–16 (D.D.C.2011); *K–Beech, Inc. v. Does 1–57*, No. 2:11–cv–358–Ftm–36SPC, 2011 WL 5597303, at *5–*7 (M.D.Fla. 2011), *Hard Drive Prods., Inc. v. Does 1–55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D.Ill. 2011).

[29/]*SBO Pictures, Inc. v. Does 1–57*, 2012 WL 1415523, at *2 (D. Md. Apr. 20, 2012) (denying joinder and stating that "the better-reasoned decisions have held that where a plaintiff has not plead[ed] that any defendant shared file pieces directly with one another, the first prong of the permissive joinder is not satisfied"); *Patrick Collins, Inc. v. Does 1–3757*, 2011 WL 5368874 (N.D.Cal. 2011) ("while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for.") See also *Hard Drive Prods., Inc. v. Does 1–188*, 809 F. Supp. 2d 1150, 1164 (N.D.Cal.2011); *Arista Records, LLC v. Does 1-11*, 2008 WL 4823160 (2008).

[30/]Doc. 4 at 4.

[31/]*Hard Drive Productions*, 809 F. Supp. 2d at 1163.

[32/]*Id.* at 1152, 1164

[33/]According to 1:12-cv-2812, Doc. 6-2 at 1, various BitTorrent clients were used, including BitTorrent, μTorrent, Vuze and BitComet.

[34/]*Id.*

[35/]1:12-cv-2820, Doc. 3-2 at 1-3; 1:12-cv-2831, Doc. 7-2 at 1-3; 1:12-cv-2894 Doc. 4-2 at 1.

-6-

Case Nos.  1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

Beyond the joinder analysis, this Court is unconvinced that Plaintiff has even pleaded a *prima facie* case of copyright infringement.[36] Here, Plaintiffs provided only an IP address snapshot, and seeks to use that information alone to justify their suit.  Given the nature of BitTorrent protocols, an individual could access the swarm, download a small piece of the copyrighted material that could be useless, and then leave the swarm without ever completing the download.  Consider Plaintiffs' motion for leave to take discovery, which states: "Reassembling the pieces using a specialized BitTorrent Client results in a fully playable digital motion picture."[37]  To this end, the mere indication of participation weakly supports Plaintiffs' conclusions.

In sum, participation in a specific swarm is too imprecise a factor absent additional information relating to the alleged copyright infringement to support joinder under Rule 20(a).

### C.  Other factors

Even if Plaintiffs could meet the Rule 20(a)(2) factors for permissive joinder, this Court would nevertheless sever Defendants because joinder would otherwise deprive the Court of a just result.  As noted above, courts can exercise discretion in weighing the effect of joinder on fundamental fairness.[38]  Permitting joinder of the unnamed defendants violates a sense of fairness,[39] as each unnamed defendant might have different defenses to the suit, necessitating a mini-trial to fully present each defendant's specific evidence.[40]  In addition, joinder of dozens of defendants

---

[36] *See Feist Publications, Inc. v. Rural Telephone Serv. Co. Inc.,* 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. . . . Certainly, the raw data *does not satisfy* the originality requirement.") (emphasis added). Even beyond the issue of joinder, this Court would hesitate to subpoena the ISPs without further information regarding Defendants' alleged conduct.

[37] *See* 1:12-cv-2894, Doc. 4-1 at 7.

[38] *See supra* note 22.

[39] *CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 554 (D. Md. 2012).

[40] *Id.*

Case Nos. 1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

would extend trial proceedings and could serve to confuse the fact-finder. It is hard to imagine how dozens or hundreds of defendants, most likely unfamiliar with civil litigation, would be able to appreciate their procedural rights in such a trial.

Courts have been troubled by what amounts to be a new business model employed by production companies "misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlement, rather than ultimately serve process and litigate the claims."[41/] This unseemly practice is made worse by the frequent practice of joining hundreds or thousands of defendants in a suit, saving plaintiffs tens of thousands of dollars in filing fees. It is in this environment where courts must take every caution to ensure that the keys to the doors of discovery are not blithely given to parties with other intentions.

Regardless of the dubious practices of others, Plaintiffs may have legitimate claims which deserve litigation. Nevertheless, unnamed Defendants are improperly joined, and in order to continue with their actions, Plaintiffs will need to pay the requisite filing fee per suit.[42/] Otherwise, Plaintiff has saved over $67,500 by consolidating its claims into four separate actions. If Plaintiffs seek to use the powers of this Court to vindicate its rights, it must pay the requisite fees like every other Plaintiff.

### III. Conclusion

For the foregoing reasons, this Court hereby SEVERS Plaintiffs' claims. Further, the motions for leave to take discovery prior to the Rule 26 conferences are DENIED AS MOOT. Plaintiffs are requested to notify the Court as to which John Doe Defendant shall remain in each of

---

[41/] *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190 (D. Mass. 2012).

[42/] *Id.* at 199 ("Requiring Plaintiff to pay a filing fee for each defendant may help ensure Plaintiff is suing the Doe defendants for a good faith reason, that is, to protect its copyright and litigate its claim, rather than obtain the defendants' information and coerce settlement with no intent of employing the rest of the judicial process.").

-9-

Case Nos. 1:12-CV-2812, 1:12-CV-2820; 1:12-CV-2831; 1:12-CV-2894
Gwin, J.

the four cases.

    IT IS SO ORDERED.


Dated: April 3, 2013                                  s/ *James S. Gwin*
                                                                        JAMES S. GWIN
                                                                        UNITED STATES DISTRICT JUDGE